IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **MELISSA COURY, Personal Representative of the Estate of RAYMOND COURY**, <br><br> Plaintiff, <br><br> v. <br><br> **AIR & LIQUID SYSTEMS CORPORATION,** *et al.*, <br><br> Defendants. | Case No. 3:17-1240-SI <br><br> **OPINION AND ORDER** |

**Michael H. Simon, District Judge.**

Before the Court are Plaintiff's second motion for remand and first motion for sanctions. Plaintiff originally filed this lawsuit in state court, two Defendants removed the action, and Plaintiff moved for remand. The district court granted Plaintiff's first motion for remand. The same Defendants then removed the case a second time, and Plaintiff has again moved for remand. As Yogi Berra reportedly said, "It's déjà vu all over again." This time, however, the Court denies Plaintiff's motion for remand for the reasons that follow. The Court also denies Plaintiff's motion for sanctions.

**STANDARDS**

The standard of review applicable to a motion for remand is the same as that applicable to a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *See Leite v. Crane Co.*, 749 F. 3d 1117, 1121-22 (9th Cir. 2014) (explaining that "[c]hallenges to the existence of removal jurisdiction should be resolved within [the] same framework" as that applicable to motions to dismiss for lack of subject matter jurisdiction, due to "the parallel nature of the inquiry"). Thus, defendants seeking removal bear "the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction" are met. *Id.* at 1121.

**BACKGROUND**

On February 26, 2016, Plaintiff Melissa Coury ("Plaintiff"), as personal representative of the estate of her father, Raymond Coury, sued eleven defendants in Multnomah County Circuit Court for the State of Oregon. *Coury v. Air & Liquid Systems Corporation*, Case No. 16CV06135 (Mult. Cty. Cir. Ct.) (*Coury I*). Among the named defendants are General Electric Company ("GE") and CBS Corporation ("CBS"). Plaintiff filed an Amended Complaint on April 8, 2016. Plaintiff alleges that her father died as a result of exposure to asbestos from various equipment while working at Northwest Marine & Iron Works Shipyard and Albina Engine & Machine Works Shipyard. Both shipyards are located in Portland, Oregon, and both serviced military and civilian vessels. Plaintiff did not provide any specific ship information in either the Complaint or the Amended Complaint.

On May 17, 2016, Plaintiff's counsel sent a declaration to Defendants that stated that Raymond Coury "often worked below deck on naval vessels." On August 11, 2016, Plaintiff's counsel sent to both GE and CBS (also known as "Westinghouse" in this action) additional information relating to Plaintiff's allegations. This information included a "Ship List" that

PAGE 2 – OPINION AND ORDER

identified the ships on which Coury allegedly worked, including U.S. Navy vessels. On September 9, 2016, shortly after receiving Plaintiff's Ship List, GE and CBS removed the lawsuit to federal court, based on the federal officer removal statute, 28 U.S.C. § 1442(a)(1). *Coury v. Air & Liquid Systems Corporation*, Case No. 3:16-cv-1796-SB (D. Or.) (*Coury II*). As the basis for their removal, GE and CBS asserted that, in supplying machinery and equipment to the U.S. Navy, GE and CBS were acting under an officer of the United States, within the meaning of the federal officer removal statute.

On September 22, 2016, Plaintiff moved for remand. Plaintiff argued that she had no evidence that Raymond Coury ever worked on a U.S. Navy ship. Thus, according to Plaintiff, the federal officer removal statute did not apply. In addition, Plaintiff argued that removal was untimely. In support of Plaintiff's motion for remand, Plaintiff's counsel, Jeffrey Mutnick, assured both the federal court and Defendants that Plaintiff did not intend to pursue any claim based on exposure by Raymond Coury aboard a U.S. Navy vessel and that Plaintiff waived any such claims. On March 21, 2017, after a hearing, U.S. Magistrate Judge Stacie Beckerman issued Findings & Recommendation ("F&R"), recommending that the court grant Plaintiff's motion to remand *Coury II*. Judge Beckerman concluded that, due to "Plaintiff's clarification and waiver of her claims" and because Plaintiff had "explicitly waived any and all claims that could conceivably be brought based on Navy vessel exposure," the court lacked federal subject-matter jurisdiction. Judge Beckerman specifically noted that removal jurisdiction was lacking, because Plaintiff stated that she never intended to bring claims based on exposure aboard a U.S. Navy vessel.

On May 26, 2017, U.S. District Judge Marco Hernandez adopted Judge Beckerman's F&R and remanded the case to state court. On June 1, 2017, the federal court remanded *Coury II*

back to state court. On June 12, 2017, GE and CBS appealed the district court's remand decision to the U.S. Court of Appeals for the Ninth Circuit. That appeal is pending as Case No. 17-35492 (9th Cir.) (*Coury III*). On appeal, the parties have filed their opening and answering briefs.

Notwithstanding the pending appeal, the case was remanded to state court. On July 11, 2017, after the parties were back in state court and while the appeal of the original remand order was progressing before the Ninth Circuit, Plaintiff's counsel, Mr. Mutnick, sent Defendants a request for production of documents in the *Coury* lawsuit, seeking, among other things: "any evidence which is in your possession and is relevant to the Plaintiff's claim that he [*sic*] was exposed to asbestos while working in the pump rooms on the USS Franklin D. Roosevelt." ECF 1-3 at 19 (Request for Production No. 28).

The next day, July 12, 2017, Randy Iola, a settlement attorney acting on behalf of Plaintiff, sent an email to Richard M. Lauth, counsel for CBS. The subject line of that email read "Raymond Coury (W&K – OR) – CBS/Westinghouse." In that email, Plaintiff's settlement counsel stated, in relevant part:

> Here is what I know about this case in Oregon. Please give me a call after you have a chance to review.
>
> **CBS/Westinghouse Equipment Summary**
>
> <u>Background</u>
>
> Raymond Coury was diagnosed with mesothelioma on or about March 14, 2014 and passed away on March 19, 2014 at 72 years old. Raymond Coury lived in Portland, OR. He is survived by his daughter Melissa Coury.
>
> <u>Exposure</u>
>
> From approximately 1960 through the 1990s, Mr. Coury worked as a shipyard worker at Swan Island, a shipyard in Oregon. During this time he was employed by Northwest Machine & Iron Works. *US Naval ships were frequently present at Swan Island and Mr. Coury was tasked with overhauling these ships. Naval Ships*

> known to be present and worked on by Mr. Coury include: USS
> Paul F. Foster (DD-964), USS Henry B. Wilson, and USS Stein
> (FF/DE-1065). As a shipyard worker, Mr. Coury had to rip out
> engine rooms, including but not limited to turbines. He was also in
> the presence of other maintenance personnel working on the
> engine room equipment.

ECF 1-5 at 2 (emphasis added). As shown in this post-remand email, Mr. Iola represented that "Naval Ships known to be present and worked on by Mr. Coury include: USS Paul F. Foster (DD-964), USS Henry B. Wilson, and USS Stein (FF/DE-1065)." Also in his email, Mr. Iola described the CBS-manufactured (or Westinghouse-manufactured) equipment known to be present on the U.S. Navy vessels USS Paul F. Foster and UUS Stein at the time Raymond Coury worked on those vessels. *Id*. Mr. Iola invited Mr. Lauth to call to discuss settling the case of Raymond Coury. *Id*.

On the same day, July 12, 2017, Mr. Iola sent a similar email to counsel for GE, Paul Slater. ECF 1-4 at 2. Mr. Iola similarly explained in detail the work that Raymond Coury did at Swan Island, including work on the U.S. Navy ships USS Paul F. Foster, the USS Stein, and the USS Henry B. Wilson. *Id*. Mr. Iola similarly listed the GE-manufactured equipment that was present on the USS Paul F. Foster and USS Henry B. Wilson when Raymond Coury worked on those vessels. *Id*. Mr. Iola similarly invited Mr. Slater to call to discuss resolving this case. *Id*.

On August 9, 2017, based on Mr. Mutnick's post-remand document request dated July 11, 2017 and Mr. Iola's two post-remand settlement emails dated July 12, 2017, GE and CBS once again removed the lawsuit to federal court, pursuant to 28 U.S.C. § 1442(a)(1). The lawsuit was given a new case number in federal court and randomly assigned to the undersigned district judge. *Coury v. Air & Liquid Systems Corporation*, Case No. 3:17-cv-01240-SI (D. Or.) (*Coury IV*). No party has requested that the undersigned transfer *Coury IV* to the judges who previously handled *Coury II*.

On September 8, 2017, Plaintiff filed her second motion to remand her claims relating to Raymond Coury back to state court. Plaintiff also separately moved for sanctions against GE and CBS. Plaintiff offers several grounds in support of her motion for remand. First, Plaintiff argues that the discovery request that Plaintiff's trial attorney, Mr. Mutnick, sent on July 11, 2017 was again sent in error and that a request for production cannot serve as a basis for removal under 28 U.S.C. § 1446. Second, Plaintiff argues that Plaintiff's settlement attorney, Mr. Iola, is not an "attorney of record" in this case and that settlement-related letters from any attorney representing a plaintiff cannot provide a basis for removal under § 1446. Third, Plaintiff argues that, because she has previously waived in the earlier proceeding and again waives now all claims arising from Raymond Coury's exposure on a U.S. Navy vessel, there are no claims to which Defendants may properly assert a federal officer defense, and thus there is no proper basis for removal.

## DISCUSSION

### A. Federal Officer Removal Generally

One requirement for removal of a civil action to federal court is that the case could have been brought in federal court originally. *See* 28 U.S.C. § 1441(a). Under the "well-pleaded complaint rule," "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Because a defense "does not appear on the face of a well-pleaded complaint, [it] does not authorize removal to federal court." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987).

Defendants, however, assert that removal is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). Under § 1442, certain cases are not subject to the well-pleaded complaint rule. Specifically, a case brought against a federal officer "may be removed . . . if the *defense* depends on federal law." *Jefferson Cty., Ala. v. Acker*, 527 U.S. 423, 431 (1999) (emphasis added). The purpose of § 1442 is "to ensure a federal forum in any case where a

federal official is entitled to raise a defense arising out of his duties." *Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017) (quoting *Arizona v. Manypenny*, 451 U.S. 232, 241 (1981)). "[F]or conduct performed under color of federal office," this removal right "is absolute." *Id.* (quotation marks omitted).

The procedure for removal under § 1442 is provided in 28 U.S.C. § 1446. Pursuant to § 1446(b)(3), when a case is not removable based on its initial pleadings, a notice of removal may nonetheless "be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or *other paper* from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3) (emphasis added).

If the procedural requirements in § 1446 are met, a party seeking removal under § 1442(a)(1) must show three things. First, the removing party must show that "it is a 'person' within the meaning of the statute." Second, the removing party must show that "there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims." Third, the removing party must show that "it can assert a 'colorable federal defense.'" *Goncalves*, 865 F.3d at 1244 (quoting *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006)). The Ninth Circuit instructs that § 1442 should be interpreted "broadly in favor of removal." *Id.*

Defendants argue that Plaintiff's post-remand request for production of documents and the post-remand emails sent by Mr. Iola constituted new and sufficient "other paper" under § 1446(b)(3) that allowed Defendants to ascertain—for the first time, at least since remand—that Plaintiff's case was removable. Specifically, Defendants argue that both the request for production of documents and the settlement-related emails provided notice that Plaintiff intended

to pursue claims related to asbestos exposure aboard U.S. Navy vessels, notwithstanding any previous, contrary representations made by Plaintiff's counsel before remand. Defendants also argue that the claims against them relating to asbestos exposure aboard navy ships are removable under § 1442, the federal officer removal statute, because to the extent that these Defendants' actions caused asbestos exposure, Defendants were acting pursuant to the directions of federal officers. According to the removing Defendants, this would establish a colorable federal defense to any claims asserted against them.

**B. Whether Plaintiff Demonstrated Intent to Pursue Claims of Exposure on Navy Ships**

    **1. Whether the Settlement-Related Emails Constitute "Other Paper"**

Plaintiff and Defendants dispute whether letters or emails sent for settlement purposes can constitute "other paper" sufficient to form the basis for removal under § 1446. The Court concludes that they can. In *Babasa v. LensCrafters, Inc.*, the Ninth Circuit considered whether a settlement letter could provide a basis removal under § 1446. 498 F.3d 972 (9th Cir. 2007). In *Babasa*, plaintiffs filed a putative class action in state court. The parties agreed to mediate, and prior to mediation plaintiffs' counsel sent defense counsel a letter, expressly for purposes of mediation. In that letter plaintiffs' counsel estimated that plaintiffs' alleged damages exceeded $5 million. *Id.* at 974. After attempts to settle the case through mediation failed, the parties conducted discovery in state court. In the course of discovery, the plaintiffs' counsel reiterated that the damages sought would exceed $5 million. Shortly thereafter, the defendant removed the case. Under the Class Action Fairness Act of 2005, Pub.L. No. 109-2, 119 Stat. 4 (2005) (codified in various sections of 28 U.S.C.), class actions with an amount in controversy exceeding $5 million may be removed to federal court. 28 U.S.C. § 1332(d)(2). The question in *Babasa* was whether the defendant's eventual removal was timely, a question governed by § 1446(b). Because the defendant had received the settlement communication disclosing that the

PAGE 8 – OPINION AND ORDER

action was removable more than 30 days before removing the action, the district court held that the removal was not timely and remanded the case back to state court. The Ninth Circuit affirmed.

The Ninth Circuit agreed with the district court that the defendant had "received § 1446(b) notice" in the form of the mediation-related letter estimating damages. *Id.* at 974. The Ninth Circuit also had "no doubt that [the defendant] could have ascertained, upon receiving the [mediation] letter, that the case was removable." *Id.* at 975. The court also noted that it had already "previously held that a settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim." *Id.* (quoting *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (alteration omitted)). Thus, a settlement-related letter or email can constitute § 1446(b) notice to the extent that it reasonably puts a defendant on notice that a case is removable.

This understanding is consistent with the law in other circuits. As the Eleventh Circuit noted, "[w]hat constitutes 'other paper' . . . has been developed judicially." *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1212 n. 62 (11th Cir. 2007). "[R]esponses to requests for admissions, settlement offers, interrogatory responses, deposition testimony, demand letters, and email estimating damages" have all been held to qualify as "other paper." *Id.*; *see also Addo v. Globe Life & Acc. Ins. Co.*, 230 F.3d 759, 762 (5th Cir. 2000) (explaining that "a post-complaint letter, which is not plainly a sham, may be 'other paper' under § 1446(b)," a holding that the court noted "is consistent with the purpose of the removal statute to encourage prompt resort to federal

court [when proper] . . . . [and] discourages disingenuous pleading by plaintiffs in state court to avoid removal").[1]

Plaintiff also argues that letters involved in settlement negotiations are inadmissible under Rule 408 of the Oregon Rules of Evidence and Rule 408 of the Federal Rules of Evidence. Both Oregon's Rule 408 and the federal Rule 408 preclude evidence of conduct or statements made in compromise negotiations from being used for certain purposes. As an initial matter, the Court notes that federal law governs the resolution of Plaintiff's remand motion. *See Babasa*, 498 F.3d at 974 (explaining that federal law governs the issue of whether a case meets the amount in controversy requirement for federal diversity jurisdiction). Thus, the Federal Rules of Evidence govern this matter. *See* Fed. R. Evid. 1101.

Rule 408 of the Federal Rules of Evidence provides that evidence of conduct or statements made during settlement negotiations is not admissible "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or contradiction." Fed. R. Evid. 408(a). This, however, is not the purpose for which Defendants use Mr. Iola's emails. Evidence of compromise negotiations may be admitted for another purpose,

---

[1] There is some support for a contrary interpretation of "other papers." *See, e.g.*, *Pack v. AC & S, Inc.*, 838 F. Supp. 1099, 1101 (D. Md. 1993) ("The phrase 'other paper' refers to 'documents generated within the state court litigation"); *Riggs v. Cont'l Baking Co.*, 678 F. Supp. 236, 238 (N.D. Cal. 1988) ("The elements of removability must be specifically indicated in official papers before the statutory period begins to run."); *Johansen v. Emp. Benefit Claims, Inc.*, 668 F. Supp. 1294, 1296 (D. Minn. 1987) (concluding that "other paper" refers "solely to documents generated within the state court litigation itself"). But these cases, which state generally that the term "other paper" may only refer to official documents in the case, typically focused on whether changes in statutory or case law after the filing of an action could constitute "other paper" supporting removability—not whether a document related to the case, though not an *official* document, may suffice. *See Sunburst Bank v. Summit Acceptance Corp.*, 878 F. Supp. 77, 80-81 (S.D. Miss. 1995) (discussing other courts' interpretations of "other paper," and noting that many courts apply it "only to papers 'filed in the case,'" while others apply it to "'papers' generally"). In light of the Ninth Circuit's holding in *Babasa*, and the general trend to include settlement letters in the definition of "other paper," these district court cases are not persuasive.

such as to show that, prior to Defendants' removal, Plaintiff demonstrated an intent to pursue claims against Defendants based on exposure aboard U.S. Navy ships.

The Court concludes that a settlement-related letter or email may constitute "other paper" under 28 U.S.C. 1446(b)(3). To the extent that such a communication brings to light new facts or claims that make a case removable, it restarts a defendant's 30-day clock for removal under 28 U.S.C. § 1446.

### 2. Whether the Settlement-Related Emails Indicate an Intent to Pursue Claims

For Plaintiff's claims to be removable to federal court, there must be a causal nexus between Plaintiff's claims and Defendants' actions under the direction of a federal officer. In *Babasa*, the Ninth Circuit noted that, in the context of an amount-in-controversy dispute, "a settlement letter is relevant evidence . . . if it appears to reflect a reasonable estimate of the plaintiff's claim." *Babasa*, 498 F.3d at 975 (quoting *Cohn*, 281 F.3d at 840) (alteration omitted). If Mr. Iola's emails reasonably put Defendants on notice that Plaintiff was pursuing a claim of exposure on U.S. Navy vessels, then—to the extent such a claim would be removable—those emails were relevant evidence on which to base a removal under § 1446(b).

The Court concludes that Mr. Iola's emails indicate that Plaintiff intended to pursue claims related to asbestos exposure on U.S. Navy vessels. Both emails identify in detail the U.S. Navy vessels on which Coury is alleged to have worked, the equipment belonging to each Defendant found aboard those ships, and the work that Coury did on those ships. Indeed, the emails *only* identify U.S. Navy vessels, and no other ships, as the sources of asbestos exposure from Defendants' machines. Mr. Iola's emails belie Plaintiff's counsel's assertion that Plaintiff did not reassert a claim for exposure aboard a U.S. Navy vessel.

Plaintiff also argues that Mr. Iola was not the attorney of record in Plaintiff's case and that "his involvement as counsel is limited to negotiations on behalf of various law firms

PAGE 11 – OPINION AND ORDER

throughout the country with the Defendants' national counsel." Plaintiff explains that her counsel in this case, Mr. Mutnick, has never met Mr. Iola and has not discussed this case directly with him. Plaintiff adds that Mr. Iola has no contractual relationship with Plaintiff. Plaintiff acknowledges, however, that her counsel, Mr. Mutnick, sought negotiation assistance on behalf of Plaintiff, and Plaintiff explains that Andy Waters from the law firm Waters & Kraus, "as a courtesy to Plaintiff's counsel, agreed to communicate" with GE and Westinghouse (CBS) on Plaintiff's behalf for the purposes of settlement. Plaintiff added that "[i]t is Plaintiff's counsel's understanding that Waters & Kraus communicates with [Defendants'] national counsel, for settlement purposes only, through Randy Iola."

Thus, Plaintiff's counsel appears to have contracted out a least a portion of the settlement negotiations in this case. The fact that Plaintiff has not directly communicated with Mr. Iola is irrelevant. Plaintiff acknowledges that she or her counsel sought assistance from Waters & Kraus in conducting settlement discussions with Defendants, and Waters & Kraus provided such assistance through Mr. Iola. Plaintiff's attempt to distance herself from Mr. Iola's representations to Defendants is unpersuasive.

Plaintiff also argues that, because she had already waived all claims arising from exposure on U.S. Navy ships in the previous remand motion and hearing, Defendants did not have a reasonable basis for concluding that she was pursuing any removable claims. The Court is unpersuaded. Plaintiff's counsel stated, quite clearly and repeatedly, including at a hearing in front of Magistrate Judge Beckerman, that Plaintiff was not pursuing any claims relating to Navy ship exposure, and that Plaintiff in fact did not—and *could not*—have any evidence of Coury being on any specific Navy vessel. After succeeding in having her case remanded, Plaintiff appears to have changed her position. Mr. Iola, acting on behalf of Plaintiff, asserted clear and

specific allegations that Coury was exposed to asbestos on U.S. Navy ships. Whether Defendants might have thought they could successfully assert waiver as an additional defense, it was not unreasonable for them to conclude that Plaintiff was once again pursing claims of exposure while on a U.S. Navy ship now that Plaintiff's case was back in state court and heading toward trial.

Plaintiff, it appears, indicated an intent to withdraw her earlier waiver. Courts have previously noted that, after a waiver, if a plaintiff attempts to litigate purportedly waived claims, defendants are "free to remove again." *See Fisher v. Asbestos Corp., Ltd.*, 2014 WL 3752020, at *4 (C.D. Cal. July 30, 2014). That is precisely what has happened in this case.

### 3. Plaintiff's Request for Production of Documents

Because the Court has concluded that Mr. Iola's emails constituted a proper basis for removal, the Court need not address whether Plaintiff's post-remand request for production of documents also renders the case removable. That said, it is difficult to read the post-remand request for production of documents as indicating anything other than an intent to litigate purportedly waived claims, especially in light of the history of this lawsuit. One inadvertent error is entirely understandable. After the first error has been discovered and corrected, however, making essentially the same purported "error" and claiming inadvertence is more problematic. Nevertheless, the Court does not reach this issue.

## C. Whether Claims of Exposure Aboard U.S. Naval Vessels are Removable

Having concluded that Defendants had notice that Plaintiff intended again to pursue claims of exposure aboard U.S. Navy vessels, the Court next considers whether such claims are removable. The Ninth Circuit instructs that § 1442 should be interpreted "broadly in favor of removal." *Goncalves*, 865 F.3d at 1244.

As the Ninth Circuit explained in *Leite*, Defendants must allege facts that establish the court's subject-matter jurisdiction, much like federal pleading requirements. A plaintiff seeking

PAGE 13 – OPINION AND ORDER

remand may make either a "facial" attack—arguing that Defendants' facts "are insufficient on their face to invoke federal jurisdiction—or a "factual attack"—"contesting the truth of [Defendants'] factual allegations." *Leite*, 749 F.3d at 1121-22. Plaintiff has launched neither a facial nor a factual challenge to Defendants' contention that a claim for exposure aboard a U.S. Navy vessel is removable. Thus, the Court must determine whether Defendants have alleged sufficient facts to establish the Court's subject-matter jurisdiction. The Court concludes that they have.

First, Defendants are "persons" within the meaning of § 1442. *See* 1 U.S.C. § 1 ("In determining the meaning of any Act of Congress, unless the context indicates otherwise . . . the word[] "person" . . . include[s] corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals."); *Watson v. Philip Morris Co., Inc.*, 551 U.S. 142, 153-54 (2007) (noting that government contractors may fall within the terms of the federal officer removal statute, implicitly accepting that they may be "persons" within the statute's meaning).

Second, Defendants have sufficiently alleged that: (1) there is a causal nexus between their actions and Plaintiff's claims of exposure on a U.S. Navy vessel; and (2) that those actions were taken pursuant to a federal officer's directions. Defendants also have provided evidence to support this assertion, which Plaintiff does not challenge. The Ninth Circuit has noted that "the 'hurdle erected by [the causal-connection] requirement is quite low.'" *Goncalves*, 865 F.3d at 1244 (quoting *Isaacson v. Dow Chemical Co.*, 517 F.3d 129, 137 (2d Cir. 2008)) (alteration in original). For this prong, Defendants "need only show that the challenged acts 'occurred *because of* what they were asked to do by the Government.'" *Id*. at 1245 (quoting *Isaacson*, 517 F.3d at 137) (emphasis in original). Here, GE and CBS contend that they installed insulation on U.S.

Navy vessels at the request of the Navy. Thus, "[t]he 'very act' that forms the basis for challenging [Defendants' conduct] . . . 'is an act that [Defendants] contend they performed under the direction of federal officers.'" *Id*. (quoting *Leite*, 749 F.3d at 1124) (alterations omitted).

With regard to the requirement that Defendants' actions be taken pursuant to a federal officer's directions, "[t]he words 'acting under' are broad," and "must be 'liberally construed.'" *Id*. (quoting *Watson*, 551 U.S. at 147) (alteration omitted). "For a private entity to be 'acting under' a federal officer, the private entity must be involved in 'an effort to assist, or to help carry out, the duties or tasks of the federal superior.' The 'relationship typically involves 'subjection, guidance, or control.'" *Id.* (quoting *Watson*, 551 U.S. at 147, 151) (emphasis omitted). Defendants have alleged that their actions on U.S. Navy vessels occurred while "acting under" the Navy's directions. CBS has provided evidence that the design, manufacture, and supply of Westinghouse turbines to the U.S. Navy was done in compliance with the Navy's MilSpecs, and was subject to close supervision and control by naval officers. The MilSpecs at the time required the use of asbestos. GE also provides evidence of a similar relationship with the U.S. Navy. The Navy had control and supervision over GE's design and manufacture of turbines for use on Navy ships, and the Navy's MilSpecs at the time required the use of asbestos in turbines.

Third, Defendants have established that they can assert a colorable federal defense to Plaintiff's claims—specifically, the government contractor defense. The government contractor defense was recognized in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988). "This defense protects government contractors from tort liability that arises as a result of the contractor's compliance with the specifications of a federal government contract." *Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720, 731 (9th Cir. 2015) (quoting *Getz v. Boeing*

*Co.*, 654 F.3d 852, 860 (9th Cir. 2011)) (alteration omitted). The Ninth Circuit has described how this defense is applied:

> To invoke the defense successfully, the contractor must establish three elements: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States."

*Getz*, 654 F.3d at 861 (quoting *Boyle*, 487 U.S. at 512) (citation omitted).

As the Ninth Circuit has explained, "[a]t this stage, [a defendant] doesn't have to prove that its government contractor defense is in fact meritorious . . . . [A] defendant invoking § 1442(a)(1) 'need not win his case before he can have it removed.'" *Leite*, 749 F.3d at 1124 (quoting *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)). Rather, Defendants must only "prove by a preponderance of the evidence . . . that its government contractor defense is 'colorable.'" *Id.* (quoting *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999)).

GE and CBS each allege that U.S. Navy officers approved reasonably precise specifications for turbines used on U.S. Navy vessels, and the equipment produced by GE and CBS conformed to those specifications. Additionally, because the Navy appears to have known at the time about the risks involved in the use of asbestos, Defendants assert that they were not required to warn the Navy about the risks of asbestos. Defendants not only allege these facts, but also provide affidavits in support of them. These factual allegations and evidentiary support establish that Defendants have at least a colorable federal defense to claims of asbestos exposure on U.S. Navy vessels.

**D. Post-Removal Waiver of Removable Claims**

Plaintiff argues that because she has again waived all claims of exposure on naval ships, the case should be remanded again. Regardless of whether the first remand was appropriate

based on the first waiver, Plaintiff's second waiver is inadequate. Plaintiff has been here before and affirmed that she would not allege any claims of exposure aboard U.S. Navy vessels. Only two months after the case was remanded, however, Plaintiff indicated through her settlement counsel, Mr. Iola, and her trial attorney, Mr. Mutnick, that she did intend to pursue such a claim.

As other cases have held, remand may be appropriate when there is no reason to doubt a plaintiff's waiver. *See, e.g.*, *Westbrook v. Asbestos Defendants*, 2001 WL 902642 at *3 (N.D. Cal. July 31, 2001) ("The court sees no reason not to hold plaintiffs in this case to their waiver of claims arising out of work done on federal jobsites and vessels. This waiver, therefore, justifies remand."). In light of the history of this lawsuit, however, Plaintiff has given the Court reason to doubt her second waiver. As the proverb goes, "Fool me once, shame on you; fool me twice, shame on me." Thus, Plaintiff's second waiver is insufficient to support a second remand.

## CONCLUSION

Plaintiff's Motion for Remand (ECF 20) and Plaintiff's Motion for Sanctions (ECF 44) are DENIED. The parties shall promptly confer regarding a case management schedule and, not later than February 16, 2018, shall file with the Court either a stipulated proposed schedule or each parties' own proposed schedule.

**IT IS SO ORDERED**.

DATED this 2nd day of February, 2018.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge