JEFFREY S. MUTNICK, OSB #721784
jmutnick@mutnicklaw.com
Law Office of Jeffrey S. Mutnick
737 SW Vista Avenue
Portland, Oregon 97205
503-595-1033 (Telephone)
503-224-9430 (Facsimile)
    *Of Attorneys for Plaintiff*

Hon. Michael H. Simon

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| MELISSA COURY, Personal Representative of the Estate of RAYMOND COURY,<br><br>       Plaintiff,<br><br>    v.<br><br>CBS CORPORATION f/k/a VIACOM, INC., a Delaware corporation, sued as successor by merger with CBS Corporation f/k/a Westinghouse Electric Corporation, successor-in-interest to BF STURTEVANT; CH MURPHY/CLARK-ULLMAN, INC., an Oregon corporation; FOSTER WHEELER, LLC, a New York corporation; FRASER'S BOILER SERVICE, INC., a Washington corporation, individually and as successor-in-interest to Fraser Boiler Works; GENERAL ELECTRIC COMPANY, a New York corporation; INGERSOLL-RAND COMPANY, a New Jersey corporation; MAR-DUSTRIAL SALES, INC. an Oregon corporation; and WARREN PUMPS, LLC, successor in interest to Warren Pumps, Inc., Quimby Pumps Co., and Warren Steam Pumps Co.,<br><br>       Defendants. | Case No. 3:17-cv-01240-SI<br><br>SECOND AMENDED COMPLAINT Wrongful Death (Civil Action for Strict Liability and Negligence)<br><br>JURY TRIAL REQUESTED |

Plaintiff alleges at all material times:

## FIRST CLAIM FOR RELIEF

### (Strict Liability against Manufacturer, Supplier, and Distributor Defendants)

1.

At all times relevant to this action, Defendants conducted regular, sustained and not isolated business activity in the State of Oregon.

2.

Plaintiff, Melissa Coury, is the duly appointed Personal Representative of the Estate of Raymond Coury ("Decedent"), and a resident of the State of Oregon.

3.

Decedent's mesothelioma was diagnosed on March 21, 2014.  This complaint is filed within the applicable statute of limitations.

4.

Decedent worked as a laborer, painter, painter supervisor, and supervisor in the Portland Oregon shipyards beginning in 1961.  During this employment, Decedent was exposed to airborne asbestos fibers either through handling asbestos and asbestos containing materials in the performance of his work, being exposed to airborne asbestos fibers created by workers who handled, installed or fabricated asbestos containing materials, or who were exposed to those materials and then exposed Decedent to those fibers.  Decedent incorporates all product identification set forth in Exhibit "A."  Exhibit "A" does not include any products located or installed on naval vessels, if any, at Decedent's work site.

Plaintiff has previously waived and now disclaims and waives any cause of action or recovery for any injuries resulting from or arising out of exposure to asbestos, if any,  on any federal government job sites, U.S. military vessel(s), or U.S. military equipment.  There are no allegations in this matter that Plaintiff was exposed to asbestos from products on U.S. naval vessels or for any acts done at the direction of a federal officer.

5.

At all material times:

a) CBS Corporation f/k/a Viacom, Inc., sued as successor by merger with CBS Corporation f/k/a Westinghouse Electric Corporation, was and is a Delaware corporation not registered to do business in the state of Oregon, engaged in the manufacture, sale and/or distribution of equipment utilizing asbestos-containing products. This equipment included Westinghouse turbines, generators, and pumps. This Defendant is being sued as a Manufacturer, Supplier, and Distributor defendant.

b) CH Murphy/Clark-Ullman, Inc. was and is an Oregon corporation registered to do business in the state of Oregon, engaged in the manufacture, sale and/or distribution of asbestos-containing products.

c) Foster Wheeler LLC was and is a New York corporation registered to do business in the state of Oregon engaged in the manufacture, distribution, and/or sale of asbestos-containing products, including, but not limited to, insulation, engines, gaskets, packing, turbines, and related component materials;

d) Fraser's Boiler Service, Inc., was and is a Washington corporation, individually and as successor-in-interest to Fraser Boiler Works, engaged in the sale and/or distribution of asbestos-containing refractory products used for the service, repair, and/or installation of boilers and/or furnaces;

e) General Electric Company was and is a New York corporation registered to do business in the state of Oregon, engaged in the manufacture, sale, and/or distribution of equipment utilizing asbestos-containing products. This equipment included turbines and generators.

f) Ingersoll-Rand Company was and is a New Jersey corporation registered to do business in the state of Oregon, engaged in the manufacture, sale, and/or distribution of equipment utilizing asbestos-containing products. This equipment included pumps and compressors.

g) Mar-Dustrial Sales, Inc. was and is an Oregon corporation registered to do business in the state of Oregon, engaged in the manufacture, sale, and/or distribution of asbestos-containing products. These products included gaskets.

h) Warren Pumps, LLC, successor in interest to Warren Pumps, Inc., Quimby Pumps Co., and Warren Steam Pumps Co., is a Massachusetts LLC and was engaged in manufacture, distribution, and sales of asbestos-containing machinery.

6.

Decedent, Raymond Coury, was exposed to airborne asbestos fibers beginning in 1961 by directly working with asbestos-containing materials and by working in the vicinity of other workers utilizing these products. At all material times, Decedent was exposed to airborne asbestos fibers either through utilizing asbestos and asbestos-containing materials in the performance of his work, or by being exposed to airborne asbestos fibers created by persons who used, installed or fabricated asbestos-containing materials.

7.

Some or all of the Defendants' asbestos-containing products and materials released respirable asbestos fibers capable of causing mesothelioma if inhaled by individuals, including the Decedent.

8.

The asbestos or asbestos-containing products of the Defendant suppliers, manufacturers or distributers were unreasonably dangerous and defective in that:

(a) The Defendants did not provide sufficient warnings and/or instructions of the harm caused by exposure to the Defendants' asbestos-containing products;

(b) The asbestos-containing products of the Defendants were capable of causing mesothelioma if inhaled by individuals, including the Decedent, in their work places, including those set forth above.

Page 4 – SECOND AMENDED COMPLAINT

(c)     Individual workers, including the Decedent, were not warned to utilize proper respiratory protection to protect them from airborne asbestos fibers within their working environment.

9.

As a result of the Decedent's exposure to the unreasonably dangerous and defective asbestos-containing products manufactured, distributed, sold, installed, applied or fabricated, Decedent contracted mesothelioma, which caused his death.  Decedent's Estate suffered non-economic damages for loss of society and companionship, grief, anguish, and for the conscious pain and suffering sustained by the Decedent prior to his death, to decedent's estate's non-economic damage in the amount of $950,000.

10.

As a result of the Decedent's exposure to the unreasonably dangerous and defective asbestos-containing products manufactured, distributed, sold, installed, applied or containing the Defendants' asbestos fiber, the Decedent contracted mesothelioma, from which he died. Decedent's Estate has suffered economic damages for medical bills, funeral and burial expenses, and loss of earning capacity in the amount of $175,000.

11.

Prior to his death, the Decedent's mesothelioma caused him pain and suffering and loss of income which pursuant to ORS 30.020(2)(b) entitles the Decedent's estate to additional damages included above.

## SECOND CLAIM FOR RELIEF

### (Negligence)

12.

The Plaintiff re-alleges paragraphs 1 through 11.

13.

Defendants were negligent generally and in one or more of the following particulars:

(a)    The Defendants did not provide sufficient warnings and/or instructions of the harm caused by exposure to the Defendants' asbestos-containing products when the Defendants, prior to the period of the Decedent's exposure to asbestos and asbestos-containing products, possessed information concerning the adverse effects and disease-producing capabilities of those products;

(b)    The Defendants failed to withdraw asbestos-containing products from the market prior to the Decedent's exposure, when the Defendants possessed information concerning the adverse effects and disease-producing capabilities of those products;

(c)    The Defendants failed to determine the level of airborne asbestos fibers emitted by their products when the products were being used by the end user;

(d)    The Defendants failed to conduct tests to determine the amount of asbestos to which the Decedent, or similarly situated workers, would be exposed, when engaging in the use of the products; and

(e)    The Defendants failed to warn individual workers, including the Decedent, regarding the hazards associated with the use of the product.

14.

As a result of the Defendants' negligence, the Decedent was exposed to airborne asbestos fibers from asbestos-containing products manufactured, distributed, sold, applied or installed by one or more of the Defendants; or containing the fiber mined and distributed by one or more of the Defendants, which caused him to contract mesothelioma, which caused his death. Decedent's Estate suffered non-economic damages for loss of society and companionship, grief, anguish, and for the conscious pain and suffering sustained by the Decedent prior to his death, to decedent's estate's non-economic damage in the amount of $950,000.

15.

As a result of the Defendants' negligence, the Decedent was exposed to airborne asbestos fibers from asbestos-containing products manufactured, distributed, sold, applied or installed by

one or more of the Defendants; or containing the fiber mined and distributed by one or more of the Defendants, which caused him to contract mesothelioma, from which he died.  Decedent's Estate has suffered economic damages for medical bills, funeral and burial expenses and loss of earning capacity in the amount of $175,000.

16.

Prior to his death, the Decedent's mesothelioma caused him pain and suffering and loss of income which pursuant to ORS 30.020(2)(b) entitles the Decedent's estate to additional damages included above.

**WHEREFORE**, Plaintiff prays for judgment as follows:

**First Claim for Relief (Strict Liability):**

1. Non-economic damages in the amount of $950,000.

2. Economic damages in the amount of $175,000.

3. Plaintiff's costs and disbursements incurred herein.

4. Any other costs this court deems equitable.

**Second Claim for Relief (Negligence):**

1. Non-economic damages in the amount of $950,000.

2. Economic damages in the amount of $175,000.

3. Plaintiff's costs and disbursements incurred herein.

4. Any other costs this court deems equitable.

Plaintiff demands a jury trial.

DATED:  March 22, 2018.

LAW OFFICE OF JEFFREY S. MUTNICK

Jeffrey S. Mutnick OSB No. 721784
*Of Attorneys for Plaintiff*
Telephone: 503-595-1033
Email: jmutnick@mutnicklaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2018, I electronically filed the foregoing **SECOND AMENDED COMPLAINT** with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record.

LAW OFFICES OF JEFFREY S. MUTNICK

Jeffrey S. Mutnick, OSB #721784
Of Attorneys for Plaintiff

**Raymond Coury**
**Exhibit A – Second Amended Complaint**

| Approximate Dates | Location | Manufacturers/ Distributors/ Suppliers | Asbestos Containing Product(s) & Equipment |
|---|---|---|---|
| 1961-1980 | Northwest Marine & Iron Works Shipyard, Portland, OR | Westinghouse | Gaskets, packing, friction materials, valves, insulation materials |
| | | CH Murphy | Turbines, generators, insulation materials, gaskets, packing. |
| | | Foster Wheeler | Insulation materials, refractory materials, friction materials, gaskets, packing, brick |
| | | Fraser's Boiler | Boilers, refractory materials, insulation materials, gaskets, packing, brick |
| | | General Electric | Insulation materials, refractory materials, friction materials, gaskets, packing, brick |
| | | Ingersoll Rand | Turbines, generators, insulation materials, gaskets, packing. |
| | | Mardustrial Sales | Gaskets, packing, friction materials, valves, insulation materials |
| | | Warren Pumps | Insulation materials, refractory materials, friction materials, gaskets, packing |

| | | | |
|---|---|---|---|
| | | | Gaskets, packing, friction materials, valves, insulation materials<br><br>Gaskets, packing, friction materials, valves, insulation materials |
| 1962-1967 | Albina Engine & Machine Works Shipyard, Portland, OR | Same as above | Same as above |